# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| MICHAEL DENNIS | : | |
| --- | --- | --- |
| | : | |
| v. | : | Criminal No. CCB-10-715 |
| | : | (Civil No. CCB-13-301) |
| UNITED STATES OF AMERICA | : | |
| | : | |

## **MEMORANDUM**

Michael Dennis is serving a 264-month sentence in the custody of the United States Bureau of Prisons after pleading guilty to conspiracy to possess with the intent to distribute cocaine base and heroin, possession of a firearm by a convicted felon, and possession of a firearm in furtherance of a drug trafficking crime. He now attacks that sentence via a motion brought under 28 U.S.C. § 2255, (ECF No. 70), arguing that his lawyer was constitutionally ineffective. In a separate motion, Dennis asks the court to equitably toll the statute of limitations. (ECF No. 73.) Dennis also asserts, via a motion for leave to supplement and request for appointment of counsel filed in 2013, (ECF No. 84), that his sentence is unlawful in light of *Descamps v. United States*, 133 S. Ct. 2276 (2013), and *Alleyne v. United States*, 133 S. Ct. 2151 (2013). Finally, in briefing authorized by the court in 2015, Dennis argues that the court may grant relief despite the Fourth Circuit's decisions in *Whiteside v. United States*, 775 F.3d 180 (4th Cir. 2014) (en banc), *cert. denied*, 135 S. Ct. 2890 (2015), and *United States v. Foote*, 784 F.3d 931 (4th Cir. 2015), *cert. denied*, 135 S. Ct. 2850 (2015). (ECF No. 95.) No hearing is necessary to the resolution of Dennis's motions. *See* 28 U.S.C. § 2255(b). For the reasons explained below, the § 2255 motion will be denied; the motion for equitable tolling will be

1

denied as moot; the motion for leave to supplement will be granted, but its arguments rejected as a basis for relief; and the request for appointment of counsel will be denied.

## BACKGROUND

Dennis was charged in a seven-count indictment alleging a series of drug trafficking and firearm counts. (*See* Indictment, ECF No. 1.) After unsuccessfully moving to suppress much of the evidence against him, Dennis pleaded guilty to three of the seven counts contained in the indictment. (*See* Plea Agreement 1, ECF No. 57.) Specifically, Dennis pleaded guilty to conspiracy to possess with the intent to distribute cocaine base and heroin in violation of 21 U.S.C. § 846, to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), and to possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). (*See* Plea Agreement 1–2; Judgment 1, ECF No. 60.) The plea agreement specified that, on the basis of a pre-plea criminal history report, the government believed Dennis to be a career offender and armed career criminal. (*See* Plea Agreement 5.) After a two-level downward adjustment for acceptance of responsibility, the government calculated the applicable advisory sentencing guideline range as 292 to 365 months of imprisonment. (*See* Plea Agreement 5.) Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), Dennis and the government agreed that a 264-month prison sentence would appropriately dispose of his case. (*See* Plea Agreement 5.)

Before accepting that plea, the court carefully reviewed it with Dennis. During that review, Dennis acknowledged, among other things, that he understood the maximum penalties for each of the charges. (*See* Opp. § 2255 Mot., Ex. C ("Sent'g Tr.") 7–8, ECF No. 81-3.) He acknowledged that he had agreed with the government as to an appropriate sentence. (*See* Sent'g

Tr. 14–15, 19, 21.) Dennis acknowledged that no one "made any threats" to induce him to plead guilty and that no one had promised him anything in exchange for that plea that was not expressed in the written letter summarized for him by the court. (Sent'g Tr. 13–14, 21.) He indicated that he was satisfied with his attorney. (Sent'g Tr. 14.) And he acknowledged that he possessed several specific guns that affected interstate commerce, that he previously had been convicted in Maryland of a crime punishable by a prison term greater than one year, and that he had agreed with at least one other person to possess with the intent to distribute cocaine base and heroin. (*See* Sent'g Tr. 15–17.) The court ultimately accepted Dennis's guilty plea. (*See* Sent'g Tr. 22.)

Pursuant to Dennis's request, the court sentenced him on the same day he entered his plea. (*See* Sent'g Tr. 22–23.) The court found that a guidelines range of between 292 and 365 months of imprisonment applied to him as an armed career criminal and career offender under U.S.S.G. § 4B1.1. (*See* Sent'g Tr. 23–24.) The court nonetheless granted a downward variance, imposing a total sentence of 264 months, consistent with Dennis's plea under Rule 11(c)(1)(C). (*See* Sent'g Tr. 30–31; Judgment 2.) The court imposed 204-month concurrent sentences for violation of 21 U.S.C. § 846 and 18 U.S.C. § 922(g)(1), and a 60-month consecutive sentence for violation of 18 U.S.C. § 924(c). (*See* Judgment 2.)[1] The judgment issued on December 19, 2011.

---

[1] There is an inconsistency between the sentence orally pronounced at the hearing and the one recorded on the judgment. At the hearing, the court indicated that violation of 21 U.S.C. § 846 would be punished with a 240-month sentence. (*See* Sent'g Tr. 31.) The judgment, however, indicated that the sentence for that crime would be 204 months. (Judgment 2.) "It is normally the rule that where a conflict exists between an orally pronounced sentence and the written judgment, the oral sentence will control." *United States v. Osborne*, 345 F.3d 281, 283 n.1 (4th Cir. 2003). Where the court's oral pronouncements are ambiguous, however, the "written criminal judgment" serves "as evidence of the sentencing court's intent" and governs the sentence. *Id.* Such ambiguity exists here. At the hearing, the court noted that Dennis's sentence for violation of 18 U.S.C. § 924(c) would be consecutive to the sentences for his two other crimes, "for a total of 264 [months]." (Sent'g Tr. 31.) If that 60-month sentence were consecutive to a 240-month term, however, then Dennis's total period of incarceration would be 300 months. In light of this ambiguity, the written judgment governs Dennis's sentence.

3

Dennis did not appeal. On December 3, 2012, he deposited his § 2255 motion in the mail system at the facility in which he was incarcerated. (*See* § 2255 Mot., Certificate of Service and Mailing, ECF No. 70.) That motion, however, was incorrectly addressed and was thus returned to him on January 7, 2013. (*See* Mot. Equitable Tolling, Ex. A, ECF No. 73-1.) The following day, Dennis again deposited the motion in the prison mail system, alongside a motion to equitably toll the statute of limitations, both of which were received on January 25. (*See* Mot. Equitable Tolling, Certificate of Service and Mailing, ECF No. 73.) On July 31, 2013, he deposited in the prison mail system a motion for leave to supplement his initial filing, asserting claims under *Descamps* and *Alleyne*. (*See* Mot. Leave to Supplement, Certificate of Service and Mailing, ECF No. 84.) On September 15, 2015, Dennis submitted additional briefing authorized by the court, arguing, *inter alia*, that the Fourth Circuit's decisions in *Whiteside* and *Foote* do not foreclose relief. (*See* Suppl. Mot. to Vacate, ECF No. 95.)

## ANALYSIS

### I. Motion to Vacate Sentence

#### A. Statute of Limitations

Under 28 U.S.C. § 2255(f)(1), a federal prisoner must file his motion within one year of "the date on which the judgment of conviction becomes final." Here, Dennis's judgment of conviction became final on January 2, 2012, "when his time for appeal expired." *Whiteside*, 775 F.3d at 182. Any motion under § 2255, then, was due by January 2, 2013. As noted, however, Dennis did not successfully deposit his motion in the prison mail system until January 8, 2013, and it was not received by the court until January 25. The government thus argues that it is untimely and must be denied.

To avoid that outcome, Dennis asserts that his motion is timely because it was filed on December 3, 2012, well before the statute of limitations had run. A certificate of mailing and service, which Dennis signed "under penalty of perjury" and attached to his § 2255 motion, indicates that Dennis initially deposited that motion, with prepaid first class postage, in the prison mail system on that date. (*See* § 2255 Mot., Certificate of Service and Mailing.) And that certificate, in turn, is corroborated by a photocopy of the envelope in which that motion was initially sent, which is postmarked December 3, 2012. (*See* Mot. Equitable Tolling, Ex. A.) As the government points out, however, that photocopy also shows that the envelope was addressed incorrectly; the zip code to the Baltimore courthouse is 21201, rather than 21202, the number written on the envelope. The motion accordingly was returned to Dennis, who received it on January 7, 2013. (*See* Mot. Equitable Tolling, Ex. A.) Although Dennis's previous pro se filing demonstrates that he was aware of the courthouse's correct address, (*see* ECF No. 68), he acted diligently upon learning of his error, depositing his motion in the prison mail system the day after it was returned to him, along with a second motion to equitably toll the statute of limitations.

Under the so-called prison mailbox rule, a prisoner's filing "is timely if deposited in the institution's internal mailing system on or before the last day for filing." Rule 3(d), Rules Governing Section 2254 & 2255 Proceedings in the United States District Courts; *see also Houston v. Lack*, 487 U.S. 266, 276 (1988).[2] Where, as here, a prisoner's initial filing is incorrectly addressed, courts have split on whether a pro se habeas petitioner is entitled to the benefit of the mailbox rule. *See Chandler v. United States*, Crim. No. 06-107-01-M, 2011 WL

---

[2] That rule also requires a prisoner mailing such a motion to use the prison's legal mail system, if such a system is available. Although Dennis invokes the mailbox rule in his tolling motion, (*see* Mot. Equitable Tolling 4–5), the government does not address the argument and thus does not contest that Dennis employed the legal mail system at the institution in which he was detained.

6097378, at *4 (D. R.I. Dec. 6, 2011) (collecting cases). This court need not answer that difficult question, however. As discussed below, even if Dennis's motion were timely filed, it still would fail on the merits.

**B. Ineffective Assistance of Counsel Claims**

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *See, e.g.*, *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, a petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the context of a plea bargain, that standard requires proof of "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Dennis first argues that his plea counsel rendered constitutionally deficient performance by inducing him to agree to a plea "under the promise of a capped sentence, dismissal of charges, and a threat of withdraw[al] from the case." (§ 2255 Mot. 8.) During his plea colloquy, however, Dennis expressly confirmed that he understood the terms of the plea—which did include an agreed-upon and, in that sense, "capped" sentence, as well as dismissal of the charges to which he did not plead guilty—and that his plea had not been induced by threat or any promise that was not expressed in his written agreement. (*See* Sent'g Tr. 13, 19–20, 21–22.)

6

"Absent clear and convincing evidence, to the contrary, [a defendant] is bound by the representations he made during the plea colloquy." *Walton v. Angelone*, 321 F.3d 442, 462 (4th Cir. 2003). That standard recognizes that "[a] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity.'" *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (second alteration and omission in original) (quoting *United States v. White*, 366 F.3d 291, 295 (4th Cir. 2004)). "Thus, in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false'" and, accordingly, subject to summary dismissal. *Id.* (internal citations omitted) (quoting *Blacklege v. Allison*, 431 U.S. 63, 76 (1977)). As noted, Dennis's sworn statements at his plea colloquy expressly contradict the factual allegations supporting his ineffective assistance of counsel claim. No extraordinary circumstances explain that contradiction. *Compare White*, 366 F.3d at 300. That argument thus must be rejected without an evidentiary hearing.

Dennis next argues that his plea counsel rendered constitutionally deficient performance by failing to investigate the prior felony convictions that supported his sentencing as an armed career criminal and career offender. Had counsel undertaken such an investigation, Dennis contends, his attorney would have discovered that his prior convictions were constitutionally infirm. Dennis does not, however, specify the defects impairing those allegedly unconstitutional prior convictions. There is thus no basis for determining whether the sentencing court would have held those prior convictions unconstitutional or whether the government would have offered Dennis a better deal on the basis of their supposed unconstitutionality. It follows that

even if Dennis's plea counsel were deficient—which this court need not and does not decide—then his failing still would not establish prejudice. For this reason, Dennis's "conclusory allegations are insufficient to establish the requisite prejudice under *Strickland*." *United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004).

In his reply, Dennis offers two additional grounds for holding his plea counsel ineffective, arguing both that his prior convictions "did not qualify as serious drug trafficking offenses under 28 U.S.C. § 994(h)" and that his counsel failed to remind the court of its inherent authority to vary downward from the sentencing range recommended by the Sentencing Guidelines. (Reply § 2255 Mot., ECF No. 83.) "Typically, courts will not consider an argument raised for the first time in a reply brief," which deprives the opposing party of an opportunity to respond. *Chang-Williams v. Dep't of the Navy*, 766 F. Supp. 2d 604, 620 n.16 (D. Md. 2011). Dennis thus forfeited these arguments by asserting them for the first time in his reply.

Alternatively, Dennis's arguments fail on their merits. As to 28 U.S.C. § 994(h), that provision "direct[s] the United States Sentencing Commission . . . to 'assure' that the Sentencing Guidelines specify a prison sentence 'at or near the maximum authorized for categories of' adult offenders who commit their third felony drug offense or violent crime," *United States v. LaBonte*, 520 U.S. 751, 752 (1997), which the Commission implemented via U.S.S.G. §§ 4B1.1–.2. Dennis argues that his prior convictions do not constitute predicate offenses because they were for violations of state statutes not listed in § 994(h). Although that provision is silent as to the effect of prior state drug convictions, U.S.S.G. § 4B1.2 recommends enhanced sentences on the basis of certain such offenses.[3] His plea counsel's failure to assert that Dennis's prior

---

[3] Dennis does not argue that the guidelines's inclusion of certain state drug crimes exceeded the scope of the Commission's statutory mandate. Nor could he, as that claim has been rejected by the Fourth Circuit, *see United*

8

offenses were not described in § 994 was neither deficient nor prejudicial.

As to his counsel's alleged failure to remind the court of its authority to vary downward from the sentencing range recommended by the guidelines, the record forecloses that argument. Indeed, the court *did* vary downward from the guidelines's recommendation. Although the court determined that the guidelines recommended a sentence of between 292 and 365 months, (*see* Sent'g Tr. 24, 28), it ultimately sentenced Dennis to 264 months in prison, (*see* Sent'g Tr. 31). The court did so pursuant to the Rule 11(c)(1)(C) plea agreement that Dennis's counsel negotiated on his behalf. And his attorney supported that agreement at sentencing by offering affirmative reasons that a downward variance was justified. (*See* Sent'g Tr. 25–26.) There is thus no basis for holding his counsel ineffective.

**II. Motion for Leave to Supplement Under *Descamps* and *Alleyne* and Additional Briefing Regarding the Effect of *Whiteside* and *Foote***

Dennis filed his motion for leave to supplement in late July 2013, slightly over a month after the issuance of *Descamps* and *Alleyne*. He contends that he is entitled to relief under both decisions, notwithstanding the Fourth Circuit's subsequent decisions rejecting the claims of career offenders in *Whiteside* and *Foote*. The court appreciates that the government has not asserted as an affirmative defense the one-year limitations period, *see United States v. Blackstock*, 513 F.3d 128, 133 (4th Cir. 2008) (characterizing the limitations period as an affirmative defense), perhaps because it believes that 28 U.S.C. § 2255(f)(3) would permit Dennis's claims to proceed. In any case, those claims lack merit, for the reasons described below.

---

*States v. Brown*, 23 F.3d 839, 840–41 (4th Cir. 1994), *abrogated on other grounds by Koon v. United States*, 518 U.S. 81 (1996), as well as every other circuit to consider it, *see, e.g.*, *United States v. Stewart*, 761 F.3d 993, 999 (9th Cir. 2014) (collecting cases).

### A. *Descamps*

Dennis challenges both his designation as a career offender and his sentencing under the Armed Career Criminal Act ("ACCA"). To the extent Dennis challenges his designation as a career offender under 28 U.S.C. § 2255, that claim is not cognizable. In *Foote*, the Fourth Circuit held that a federal prisoner's allegedly erroneous career offender designation could not be heard under § 2255 where the prisoner did not assert his actual innocence of the predicate offense, his sentence was imposed under the post-*Booker* advisory Sentencing Guidelines, and his sentence did not exceed the maximum statutory penalty. 784 F.3d 931 at 940–44. The same is true here. Dennis does not assert that he is factually innocent of the prior offenses. His designation as a career offender was merely advisory, not mandatory. And his sentence for each crime did not exceed the pertinent statutory maximum. Further, even if his claim *were* cognizable, it would fail for the same reasons as his challenge to application of the ACCA, as explained below.

To determine whether a prior conviction constitutes a predicate offense for the purposes of the career offender guidelines or the ACCA, "two types of analyses are potentially applicable—known as the 'categorical' approach and the 'modified categorical' approach." *United States v. Harcum*, 587 F.3d 219, 222 (4th Cir. 2009) (describing the approach to determining whether an offense constitutes a "violent felony" under the ACCA), *abrogated on other grounds by United States v. Aparicio-Soria*, 740 F.3d 152, 155–56 (4th Cir. 2014); *see also United States v. Carthorne*, 726 F.3d 503, 511 & 523 n.6 (describing the approach to a "crime of violence" under the career offender guidelines) (4th Cir. 2013). Under the categorical approach, the "[s]entencing court[ ] may 'look only to the statutory definitions'—*i.e.*, the elements—of a

defendant's prior offenses, and *not* 'to the particular facts underlying those convictions.'" *Descamps*, 133 S. Ct. at 2283. So long as the statute of conviction has the same elements as the generic crime listed in the guidelines or the ACCA—or, alternatively, more elements—then the prior conviction constitutes a predicate offense. *Id. Descamps* clarified the application of the modified categorical approach, reiterating that it "serves a limited function" relevant only to a "'narrow range of cases.'" *Id.* (quoting *Taylor v. United States*, 495 U.S. 575, 602 (1990)). Specifically, *Descamps* held that the modified approach applies exclusively where the statute of conviction "is 'divisible'—*i.e.*, comprises multiple, alternative versions of the crime." *Id.* at 2284. Dennis asserts that his sentence must be reevaluated in light of *Descamps*. For the purpose of this motion, the court will assume that *Descamps* is retroactive.

The ACCA imposes a 15-year mandatory minimum sentence on defendants convicted of violating 18 U.S.C. § 922(g) if such defendants "ha[ve] three previous convictions by any court referred to in section 922(g)(1) . . . for a violent felony or a serious drug offense . . . ." 18 U.S.C. § 924(e)(1).[4] The statute defines a serious drug offense as, among other things, "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). Similarly, under the guidelines, a defendant is a career offender where, among other requirements, he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a)(3). The guidelines define a "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a

---

[4] Section 922(g)(1) refers to "any court." *See* 18 U.S.C. § 922(g)(1).

counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

At the time of Dennis's prior convictions, as now, Maryland law included a generic offense of manufacturing, distributing, possession with intent to distribute, or dispensing a controlled dangerous substance, but it prescribed different penalties depending on the substance at issue. *See* Md. Code Ann., Crim. L. §§ 5-602, 5-607, 5-608.[5] Because it is "thus impossible to tell whether a defendant's conviction qualifies as an ACCA [or career offender] predicate from the statutory elements alone," this statute is "divisible." *See United States v. Washington*, 629 F.3d 403, 408 (4th Cir. 2011). The modified categorical approach therefore applies. *See id.*

Under the modified categorical approach, courts may consider only certain documents to determine whether a prior conviction qualifies as a predicate offense. *Descamps*, 133 S. Ct. at 2284. Specifically, courts making such a determination are limited to documents that "approach[] the certainty of the record of conviction." *Shepard v. United States*, 544 U.S. 13, 23 (2005). The Fourth Circuit has identified plea agreements and plea colloquy transcripts, among other documents, as "*Shepard*-approved sources." *See United States v. Thompson*, 421 F.3d 278, 281–82 (4th Cir. 2005), *cert. denied,* 547 U.S. 1005 (2006). "The common denominator of the approved sources is their prior validation by process comporting with the Sixth Amendment. Excluded sources, such as transcripts of testimony or police reports, are not necessarily inherent in the conviction." *Id.*

A sentencing court may rely solely on a presentence report ("PSR") under certain circumstances. When the court uses the report to determine the *fact* of a conviction, as opposed to its underlying circumstances, there is no need for it to consider additional *Shepard*-approved

---

[5] Intervening amendments to these provisions have not changed their substance for purposes of this analysis.

12

documents. *See United States v. Boykin*, 669 F.3d 467, 471 (4th Cir. 2012) (reasoning that information about the fact of a crime "would exist in an indictment or other *Shepard*-approved source"). When the factual details of the PSR are at issue, however, the court must satisfy itself that the PSR "bears the earmarks of derivation from *Shepard*-approved sources." *Id.* (quoting *Thompson*, 421 F.3d at 285); *id.* at 472. Here, the court relied on the pre-plea report to determine that Dennis previously had been convicted of at least three felony drug offenses in Maryland: distribution and conspiracy to distribute a controlled dangerous substance in Case No. 205286016 ("2005 offense"), possession with intent to distribute a controlled dangerous substance in Case No. 107303027 ("2007 offense"), and possession with intent to manufacture, distribute, or dispense a controlled dangerous substance in Case No. 109048015 ("2009 offense"). (*See* Sent'g Tr. 23; Pre-Plea ¶¶ 4, 9, 11, 17).[6] Dennis argues that the 2005 offense does not qualify as a predicate conviction because his guilty plea resulted in a disposition of probation before judgment, which does not constitute a "conviction" under Maryland law.[7]

Dennis is correct on the law, but not on its application to his case. The Maryland statute providing for probation before judgment states that a "court may enter judgment and proceed as if the defendant had not been placed on probation" if the defendant violates a condition of probation. Md. Code Ann., Crim. Proc. § 6-220(f); *see also Shilling v. State*, 577 A.2d 83, 87 (Md. 1990) (quoting *Myers v. State*, 496 A.2d 312, 316 (Md. 1985)) (explaining that, under a previous version of the statute, "probation before judgment is a conviction if the defendant

---

[6] Dennis does not argue that the rule for a pre-plea report differs from the rule for a PSR where, as here, the court proceeded directly to sentencing after accepting the defendant's guilty plea.

[7] For the purposes of the ACCA, a "conviction" is defined by state law. *See* 18 U.S.C. § 921(a)(20); *United States v. Nash*, 627 F.3d 693, 696 (8th Cir. 2010). As noted, the ACCA enhancement requires three predicate convictions, while the career offender guideline requires two. Thus, the 2005 offense is not critical to Dennis's career offender status. Even if it were, however, the guidelines indicate that "[a] diversionary disposition resulting from a finding or admission of guilt . . . in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered . . . ." U.S.S.G. § 4A1.2(f); *see also* U.S.S.G. § 4B1.2 cmt. 3 ("The provisions of § 4A1.2 . . . are applicable to the counting of convictions under § 4B1.1.").

13

violates the probation order and judgment is then entered for the crime for which he had been previously found guilty"). According to the pre-plea report, that is exactly what happened here. Dennis "pled guilty [to the 2005 offense] . . . and was granted 3 years Probation Before Judgement (PBJ)," but his probation subsequently was revoked, "and [he] was sentenced to 3 years from January 27, 2009, concurrent with [the sentence in another case]." (Pre-Plea ¶ 4.)

In any case, both the government and Dennis have provided independent, *Shepard*-approved documents that corroborate the information in the pre-plea report. The government attached certified copies of Dennis's three state-court convictions to its opposition to Dennis's motion for leave to supplement and request for appointment of counsel. (*See* Opp. to Mot. Leave to Supplement, Exs. A–C, ECF Nos. 86-1–86-3.) And Dennis submitted, among other records, a transcript of state-court proceedings before Judge George Russell III on June 9, 2009, which shows that the court entered judgment and sentenced Dennis to imprisonment on all three offenses at issue—the 2005 offense, the 2007 offense, and the 2009 offense—pursuant to an agreement between Dennis and the state, in which Dennis pled guilty to the 2007 and 2009 offenses and admitted to a violation of probation regarding the 2005 offense, to which he previously had pled guilty. (*See* Mot. Leave to Supplement, Ex. B ("6/9/09 State Tr.") 5–6, 17–19 (2007 offense), 19–22 (2009 offense), 22–23, 27, 28–30 (2005 offense), ECF No. 84-2; *see also* Mot. Leave to Supplement, Ex. A ("1/19/07 State Tr."), ECF No. 84-1 (2005 offense).)

Thus, both the pre-plea report and independent, *Shepard*-approved records confirm that Dennis was convicted of the three offenses upon which the sentencing court relied in designating him an armed career criminal and career offender. Although there is no indication in the record that the court considered the records of conviction or state-court transcripts at the time of

sentencing, any error is harmless, as the documents conclusively show that Dennis was convicted of the required predicate offenses. Reviewing courts are permitted to take judicial notice, pursuant to Federal Rule of Evidence 201, of court records from prior proceedings that were not submitted to the sentencing court. *See United States v. McDonald*, 617 Fed. App'x 255, 258 (4th Cir. 2015) ("Nonetheless, to remove any doubt created by McDonald's factual claim [regarding the nature of his conviction], and because the accuracy of the state judgments included in the addendum to the Government's brief is not disputed, we conclude that it is in the interest of justice to take judicial notice of the judgments.");[8] *see Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that the most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (internal quotation marks and alteration omitted).

The remaining question is whether these convictions do, in fact, qualify as predicates for ACCA and career offender purposes. Applying the modified categorical approach, *see Washington*, 629 F.3d at 408, there is no dispute that each offense involved cocaine or heroin, an observation corroborated by the transcripts of Dennis's state plea proceedings, (*see* 1/19/07 State Tr. 15–16; 6/9/09 State Tr. 17–19, 19–22). The elements of those crimes are identical to those of the generic offense described in the ACCA, *see* Md. Code Ann., Crim. L. § 5-602, and offenses involving cocaine or heroin are felonies punishable by a maximum term of imprisonment of 10 years or more (specifically, a maximum of 20 years and at least 10 years for a second offense), *see* Md. Code Ann., Crim. L. § 5-608; *see also* Md. Code Ann., Crim. L. §§ 5-101(z)–(aa), 5-402(c)(1)(xv), 5-403(b)(3)(iv).[9] Accordingly, they constitute predicate offenses for the purposes

---

[8] Unpublished opinions are cited for the soundness of their reasoning, not for any precedential effect.
[9] As noted, intervening amendments to these provisions have not changed their substance for purposes of this analysis.

of sentencing under the ACCA and the career offender guideline.

### B. *Alleyne*

*Alleyne* held that, under the Sixth Amendment, "any fact that increases the mandatory minimum is an 'element' [of the charged crime] that must be submitted to the jury." 133 S. Ct. at 2155. In so doing, it overruled *Harris v. United States*, 536 U.S. 545 (2002), which had come to the contrary conclusion. For the purpose of resolving this motion, the court will assume that *Alleyne* applies retroactively.

Dennis argues first that the court sentenced him on count I to a mandatory minimum sentence of 20 years, premised on a conspiracy to distribute quantities of drugs greater than what he acknowledged possessing in his plea, in violation of the Sixth Amendment as construed in *Alleyne*. Not so. On count I, the court sentenced him to a 204-month term under 21 U.S.C. § 841(b)(1)(C), a determination that was not premised on his participation in a conspiracy to distribute a specified quantity of cocaine base or heroin. (*See* Judgment 1.) Dennis expressly acknowledged agreeing to distribute an unspecified quantity of drugs in his plea agreement. (*See* Sent'g Tr. 16–17.) There is thus no violation of *Alleyne*, which reaffirmed a sentencing court's "discretion in selecting a punishment 'within limits fixed by law.'" 133 S. Ct. at 2161 n.2 (quoting *Williams v. New York*, 337 U.S. 241, 246 (1949)).

Dennis also argues that the court sentenced him on the basis of prior convictions to which he did not stipulate in his plea. That is arguably correct but legally irrelevant.[10] *Alleyne*, 133 S. Ct. at 2160 n.1, expressly preserved the rule established by *Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998), which "held that the Sixth Amendment permits a judge to find the fact of a prior conviction by a mere preponderance of the evidence, even if this fact raises the

---

[10] Dennis's counsel agreed at sentencing that he qualified as a career offender. (*See* Sent'g Tr. 18, 24.)

statutory maximum or minimum penalty for the current offense," *United States v. McDowell*, 745 F.3d 115, 123 (4th Cir. 2014) (summarizing *Almandarez-Torres*). "*Almandarez-Torres* remains good law." *Id.* at 124. The court thus did not violate the Sixth Amendment by sentencing Dennis on the basis of prior convictions to which he did not expressly stipulate during his guilty plea.

### C. Other Claims

Dennis argues that the court may grant him relief despite the Fourth Circuit's decisions in *Whiteside* and *Foote*.[11] In *Whiteside*, the Fourth Circuit refused to equitably toll a § 2255 petition where changes in circuit precedent meant that the defendant no longer qualified as a career offender. 649 F.3d at 187. In *Foote*, the Fourth Circuit held that claims related to the application of the career offender guideline are not cognizable under § 2255. 784 F.3d at 940. Dennis concedes that these decisions affect his career offender arguments, but he offers several alternative paths to relief. For example, he urges the court to grant relief under 28 U.S.C. § 2241 on the basis that his designation as an armed career criminal and career offender constitutes a miscarriage of justice. He also relies on *United States v. Newbold*, 791 F.3d 455 (4th Cir. 2015), for the principle that a defendant who is incorrectly sentenced as an armed career criminal, and thus receives a longer sentence the law authorizes, is entitled to resentencing.

Each of Dennis's theories requires the court to conclude that he was incorrectly categorized as an armed career criminal or career offender. For the reasons discussed above, however, there was no error in this classification. Thus, none of the remaining claims entitle him

---

[11] Because Dennis's remaining claims fail on the merits, the court need not consider the government's argument that they are procedurally defaulted and time-barred.

to relief.[12]

**III. Certificate of Appealability**

After a district court denies the entirety of a motion under 28 U.S.C. § 2255, a prisoner may appeal that decision only if a "judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B); *see also* Fed. R. App. P. 22(b)(1). Accordingly, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing Section 2254 & 2255 Proceedings in the United States District Courts.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where, as here, a district court rejects on the merits a prisoner's claims, that standard is met if the prisoner "demonstrate[s] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Dennis's claims do not meet that standard. Accordingly, no certificate of appealability will issue.

## CONCLUSION

For the reasons stated above, Dennis's § 2255 motion will be denied; the motion for equitable tolling will be denied as moot; the motion for leave to supplement will be granted, but its arguments rejected as a basis for relief; the request for appointment of counsel will be denied; and a certificate of appealability will not issue.

---

[12] As the government notes, Dennis's sentence on count IV, possession of a firearm by a convicted felon, is concurrent with, and shorter than, his consecutive sentences on count I, conspiracy to possess with intent to distribute cocaine base and heroin, and count V, possession of a firearm in furtherance of a drug trafficking crime.

A separate order follows.


<u>5/5/17         </u>                                              <u>         /S/                          </u>
Date                                                    Catherine C. Blake
                                                        United States District Judge